# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH A. BOGLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:17-cv-01487-AKK** |
| **THE BOARD OF TRUSTEES OF** | ) | |
| **ALABAMA AGRICULTURAL &** | ) | |
| **MECHANICAL UNIVERSITY, et** | ) | |
| **al.,** | ) | |
| | | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Deborah Boglin brings a single First Amendment retaliation claim pursuant

to 42 U.S.C. § 1983 against Alabama Agricultural and Mechanical University

(Alabama A&M); Alabama A&M's Board of Trustees; each individual member of

the Board of Trustees, in both their official and individual capacities; and Yvette

Clayton, the Director of Career Development Services (CDS) at Alabama A&M, in

both her official and individual capacity. The Defendants have now filed a motion

to dismiss, doc. 19, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal

Rules of Civil Procedure asserting Eleventh Amendment immunity and arguing

that Boglin has failed to plead a plausible First Amendment retaliation claim. That

motion is now fully briefed, docs. 20 and 27, and ripe for decision.[1]  After carefully reviewing the parties' excellent briefs, the applicable law, and the complaint, the court finds that the Defendants' motion is due to be granted.  The court will allow Boglin an opportunity, however, to replead her claims against Clayton and her individual capacity claims against the board.

## II. STANDARD OF REVIEW

Typically, immunity issues are construed as challenges to the subject-matter jurisdiction of a federal court properly raised under Rule 12(b)(1), at least where, as here, the jurisdictional challenge does not implicate the underlying merits of the case.  *See Garrett v. Talladega Cty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1373 (N.D. Ala. 2013); *Harris v. Bd. of Trs. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1231 (N.D. Ala. 2012).  A 12(b)(1) challenge may take the form of

---

[1] The Defendants have also filed a reply brief and supporting exhibits, doc. 28, which the court **STRIKES** *sua sponte* based on the Defendants' failure to follow the page limitations of this court's Uniform Initial Order available on the website for the United States District Court for the Northern District of Alabama at http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon. Counsel for the Defendants are experienced practitioners in this District and the court is confident they are aware of the existence of this order which, among other things, strictly limits reply briefs to a maximum of five pages.  The Defendants' reply brief, not counting exhibits,  is over 27 pages long, nearly twice the length of its initial brief, and consists of well over 5,000 words.  Accordingly, the court relies solely on the Defendants' initial brief and Boglin's response to rule on the Defendants' motion.  The court places counsel for the Defendants on notice that the court's orders are not instruments of fiction that parties can ignore.  Instead, the court's uniform initial order is critical in enabling it "to maintain control over its docket . . . [a] power [that] is necessary for the court to administer effective justice and prevent congestion." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004); *see also United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (explaining that "'[a]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders'") (quoting *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964–65 (9th Cir. 2004)).  The court will make a note internally and will impose sanctions in the future if counsel engages in similar conduct.

a facial or factual attack on the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack "'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). On the other hand, a factual attack challenges "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529). In such an instance, the court may hear conflicting evidence and decide the factual issues bearing on jurisdiction. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). In their initial brief, the Defendants do not reference the existence of any facts beyond the pleadings bearing on this court's jurisdiction. Accordingly, the court construes the Defendants' 12(b)(1) motion as a facial attack.[2]

In addition to meeting this court's jurisdictional requirements, Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he

---

[2] This ruling renders academic any debate regarding whether a motion to dismiss on Eleventh Amendment grounds is properly brought under Rule 12(b)(1) or Rule 12(b)(6). In either case, the procedural safeguards enjoyed by the plaintiff are the same. *See, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (noting that a facial attack on jurisdiction under 12(b)(1) and a motion to dismiss for failure to state a claim under 12(b)(6) both require the deciding court to consider the allegations in the complaint as true).

pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to comply with Rule 8(a)(2) or does not otherwise state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*,

4

550 U.S. at 555 (emphasizing that "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level"). Ultimately, the line between possibility and plausibility is a thin one, and making this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. FACTS

Boglin worked as a senior secretary for CDS at Alabama A&M. Doc. 1 at 3. In this position, she had no supervisory duties and instead provided general office assistance to the department. *Id.* In October 2014, Boglin learned that other CDS employees, including her direct supervisor Yvette Clayton, were, among other things, manipulating Alabama A&M's leave system and following improper reimbursement procedures for grants and contract work. *Id.* As part of her ordinary office responsibilities, Boglin processed various requisition requests and other forms reflecting these improper practices. *Id.* Boglin also alleges that Clayton asked her to sign off on purportedly fraudulent reimbursement requests even though this task was beyond the ordinary scope of Boglin's duties. *Id.* at 4.

Concerned by this conduct, Boglin showed some of the improperly completed documents to another CDS employee. *Id.* She also twice verbally reported the issues in CDS to Alabama A&M's Vice President of Student Affairs Dr. Bennie McMorris. *Id.* When Clayton learned about the reports to Dr.

McMorris, she retaliated by verbally humiliating Boglin, treating Boglin more harshly than other CDS employees, and, ultimately, by discharging Boglin. *Id.* As a result, Boglin filed this lawsuit alleging that she was retailed against in violation of the First Amendment.

## IV. DISCUSSION

In their motion to dismiss, the Defendants argue that (1) Boglin's claims are barred by the Eleventh Amendment (except for the individual capacity claims against Clayton and the Alabama A&M board members); and (2) that Boglin has failed to allege sufficient facts to plausibly state a claim for retaliation under the First Amendment. The court will address each argument in turn.

### A. Eleventh Amendment Immunity

"'The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity.'" *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995) (quoting *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir. 1993) *rev'd on other grounds* 28 F.3d 1146 (11th Cir. 1994)). Here, neither exception applies since Alabama has not waived its immunity, *Alabama A&M University v. Jones*, 895 So. 2d 867, 873 (Ala. 2004), and § 1983 does not represent an abrogation of the Eleventh Amendment. *See*

*Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Thus, "[t]o receive Eleventh Amendment immunity, [the] defendant[s] . . . need only be acting as . . . 'arm[s] of the State,' which includes [the State's] agents and instrumentalities." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). Significantly, "[t]his jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). In other words, the state, along with its agents and instrumentalities, is immune from suit in federal court regardless of whether the plaintiff is seeking legal or equitable relief. *See id.*

However, the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908) provides a narrow exception to this general rule when a "suit alleg[es] a violation of the federal constitution against a state official in [her] official capacity for injunctive relief on a prospective basis." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). To determine whether a suit falls within the *Ex parte Young* exception for prospective relief, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

Notably, the *Ex parte Young* exception does not allow a plaintiff "to adjudicate the legality of past conduct." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Therefore, "*Ex parte Young* requires the allegation of an ongoing and continuous violation of federal law." *Id.* at 1338. Moreover, *Ex parte Young* cannot "operate as an exception to . . . sovereign immunity where no defendant has any connection to the enforcement of the challenged law at issue." *Id.* at 1341. Thus, before the exception applies, the "state officer [named as a defendant in her official capacity must have] the authority to enforce an unconstitutional act in the name of the state." *Id.*

Boglin expressly concedes that Alabama A&M is not a legal entity capable of being sued and that the Eleventh Amendment otherwise bars her claims for money damages and retrospective equitable relief against both the individual members of A&M's Board of Trustees and Boglin's supervisor, Yvette Clayton, in their official capacities. Doc. 27 at 4 n.2.[3] She argues, however, that her complaint does contain a request for reinstatement, and that this specific claim falls

---

[3] Boglin does not concede that her claims against the board, as a distinct entity, are barred by the Eleventh Amendment. However, it is well established that the boards governing state universities in Alabama are considered arms of the state for Eleventh Amendment purposes. *See, e.g.*, *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir. 1993) (finding that Alabama A&M's Board of Trustees is entitled to immunity from suit under the Eleventh Amendment), *rev'd on other grounds* 28 F.3d 1146 (11th Cir. 1994); *Harden v. Adams*, 760 F.2d 1158, 1164 (11th Cir. 1985) (noting that the Alabama Supreme Court has already "determined that the Board of Trustees of a state university is entitled to sovereign immunity as an instrumentality of the state"). Thus, all of her claims against the board are also subject to dismissal, a point which Boglin does not explicitly contest.

within the *Ex parte Young* exception. The Defendants seek to defeat this conclusion by arguing, in part, that Boglin's termination constituted a discrete act that occurred in the past. Accordingly, absent any allegations establishing a continuing violation of Boglin's constitutional rights, the Defendants argue that *Ex parte Young* does not apply. Alternatively, the Defendants contend that even if reinstatement qualified as prospective relief, both the Trustees and Clayton lack the ability to rehire Boglin and are consequently still entitled to Eleventh Amendment protection in their official capacities.

  *1. Whether Boglin has Pleaded a Continuing Violation of her Constitutional Rights*

  The Eleventh Circuit has repeatedly held that a request for reinstatement is cognizable via the *Ex parte Young* exception. *See, e.g.*, *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (holding that "[w]e have determined previously that requests for reinstatement constitute prospective injunctive relief that fall[s] within the scope of the *Ex parte Young* exception"); *Lassiter*, 3 F.3d at 1485 (classifying reinstatement as prospective relief "not barred by the Eleventh Amendment"). Nor is such a conclusion unusual. In fact, "almost every circuit court has reached the same result." *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (collecting cases "treating reinstatement as an acceptable form of prospective relief that may be sought through *Ex parte Young*"). As these out-of-circuit decisions explain, even though a discharge is an act that occurred in

the past, it continues to "harm [the plaintiff] by preventing [her] from obtaining the benefits of [state] employment." *Coakley v. Welch*, 877 F.2d 304, 307 n.2 (4th Cir. 1989); *see also Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) (rejecting "the defendants' argument that reinstatement does not constitute prospective relief designed to end a continuing violation of federal law"). Both logic and this solid wall of precedent compels the conclusion that reinstatement neither offends the principal harm the Eleventh Amendment was enacted to guard against, "an illegitimate award of retroactive damages" against the state, *Coakley*, 877 F.2d at 307 n.2, nor represents an unusual circumstance "where the state's sovereign interests would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Lane*, 772 F.3d at 1351 (quotation omitted); *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (explaining that the Eleventh Amendment protects the state from suits by "private parties seeking to impose a liability which must be paid from public funds in the state treasury"). In light of this precedent, and absent any contrary binding authority presented by the Defendants, the court finds that Boglin's request for reinstatement would, in the usual case, be cognizable via *Ex parte Young*.

   2. *Whether the Trustees have the Authority to Reinstate Boglin*

   Unfortunately for Boglin, this is not the usual case. As mentioned above, the *Ex parte Young* exception only applies in instances where "the state officer

[named as a defendant in her official capacity] has the authority to enforce an unconstitutional act in the name of the state." *Summit Med.*, 180 F.3d at 1341. Here, the complaint fails to allege that Clayton, the board, or the individual board members had the authority to reinstate Boglin's employment.[4] In fact, under Ala. Code § 16-49-23, the Alabama Legislature has explicitly provided that "[t]he board shall not engage in activity that interferes with the day-to-day operation of the university." This section goes on to define the primary responsibility of the "board of trustees [as setting] policy for the university and [prescribing] rates of tuition and fees." Ala. Code § 16-49-23. Thus, Alabama law is clear on its face that day-to-day University operating decisions, such as the hiring and firing of University staff, are under the control of the president, a conclusion confirmed by the Alabama Supreme Court which recently explained that "[e]mployment decisions are clearly within the job description of the president of the University." *Ex parte Hugine*, No. 1130428, 2017 WL 1034467, at *11 (Ala. Mar. 17, 2017) (citing Ala. Code § 16-49-23). When, as here, "the plain reading of a statute produces an unambiguous and reasonable definition of a term, [the court] will not look past that plain reading and read into the text of the statute an unstated purpose." *In re*

---

[4] The court notes in this respect that Boglin relies entirely on the statutory scheme governing Alabama A&M to establish the contours of the board's authority over hiring and firing decisions. However, as discussed *infra*, this statutory framework grants operational powers directly to the president of the university—leaving the board only the power to review those operational decisions and to set policy goals. Moreover, Boglin's complaint fails to allege that, in practice, the board exerts greater power over university operations than the Alabama Code suggests.

*Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010). Moreover, Alabama law provides that "[w]hen the legislature has made clear its intent that one public official is to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization." *McGlathery v. Ala. A&M Univ.*, 105 So. 3d 437, 443 (Ala. Civ. App. 2012) (quotation omitted). Thus, absent explicit statutory authorization, the grant of statutory hiring authority to the president operates as a bar to the participation of the board in the hiring and firing university employees.

Boglin resists this interpretation by arguing that Ala. Code § 16-49-24 provides that "the [Trustees] . . . shall have exclusive jurisdiction, power, and authority with regard to the supervision, management and control of Alabama [A&M]," and that Ala. Code § 16-49-23 establishes that the president's actions are "subject to [the] review and concurrence of the [Trustees]." This myopic reading, however, ignores additional language in the statute explaining that the board's powers over Alabama A&M are limited as provided elsewhere in the code. *See* Ala. Code § 16-49-24. Indeed, one of those explicit areas of limitation is the day-to-day operation of the University which the Alabama legislature has expressly exempted from the board's control. *See* Ala. Code § 16-49-23. Under Alabama's statutory scheme, the board's supervisory and management authority over the University is limited to setting policy and tuition rates, hiring the president, and

reviewing and approving the president's decisions to "regulate, alter, and modify the organization of the university." *See id.* Even if this language conclusively established the board's power to review and approve a decision to hire a departmental secretary, which it does not, the power to approve an action plainly does not encompass the power to take that action in the first instance. Therefore, because the discretionary powers provided to an official may not be exercised by another official absent statutory authorization, *see McGlathery*, 105 So. 3d at 443, the court finds that Boglin has failed to plead, or to otherwise establish as a matter of law, that the individual members of the board are able to directly provide the injunctive relief she requests. As such, the individual board members are entitled to sovereign immunity and Boglin's claims against them, in their official capacity, are subject to dismissal on that basis.

### B. No Plausible First Amendment Claim

The Defendants also attack the substantive basis of Boglin's claim contending that she has failed to plausibly allege a First Amendment violation because her speech does not qualify for First Amendment protection. It is hornbook law that "[a] government employer may not demote or discharge a public employee in retaliation for speech protected by the First Amendment." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015). However, a government employee, by virtue of her public service, "must

accept certain limitations on [her] freedom[s]." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The law in this arena seeks to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968).

The court's inquiry into whether a public employee's speech is protected by the First Amendment has two parts. *Alves*, 804 F.3d at 1159. At the outset, the court must determine "whether the employee spoke as a citizen on a matter of public concern. . . . If the answer is no, the employee has no First Amendment cause of action based on . . . her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. If the answer is yes, however, the court must determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* In short, "[t]he First Amendment will step in to safeguard a public employee's right, as a citizen, to participate in discussions involving public affairs, but 'it [will] not empower [her] to constitutionalize [an] employee grievance.'" *Alves*, 804 F.3d at 1160 (quoting *Garcetti* 547 U.S. at 420).

Here, the Defendants' motion is based solely on the first prong of the *Garcetti* inquiry, i.e. the Defendants argue that Boglin's complaint does not

plausibly allege that she was speaking as a citizen on a matter of public concern when she internally reported misconduct in her department. As described above, the First Amendment only protects Boglin's speech if it was made "(1) as a citizen and (2) on a matter of public concern." *Id.* As a threshold matter, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421. The primary inquiry into whether a public employee spoke as a citizen is "whether the speech at issue 'owes its existence' to the employee's professional responsibilities." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 618 (11th Cir. 2015) (citation omitted). In making this determination, the court considers a variety of factors "such as the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's job." *Id.* Critically, "the mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee . . . speech." *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014). In other words, *Garcetti* requires the court to resolve "whether the speech is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.*

The second requirement for constitutional protection—that the speech addresses a matter of public concern— emphasizes "the context of the speech and

asks whether the employee spoke on a matter of public concern or on matters of only personal interest." *Alves*, 804 F.3d at 1162. Under Supreme Court precedent, speech is considered on a matter of public concern if it relates to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Recognizing that "[a]n employee's speech will rarely be entirely private or entirely public," *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993), the court must examine "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. If "'the main thrust of the speech in question is essentially public,'" it qualifies for First Amendment protection. *Alves*, 804 F.3d at 1162 (quoting *Vila v. Padron*, 484 F.3d 1334, 1340 (11th Cir. 2007)). While a court may not rely solely on whether the employee's speech was aired to the public, both this factor and the employee's motivation for speaking, are pertinent to the inquiry. *Id.* However a "public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986). In general, "'courts have found speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection.'" *Alves*, 804 F.3d at 1166 (quoting *Maples v. Martin*, 858 F.2d 1546, 1552 (11th Cir. 1988)).

With these principles in mind, the court turns now to the specific allegations in Boglin's complaint.

*1. Whether Boglin Spoke as a Citizen or a Public Employee*

It is evident from the complaint that Boglin's verbal reports of CDS misconduct owed their existence to Boglin's professional responsibilities. Boglin's reports were exclusively made at the workplace and directed toward other Alabama A&M employees. Moreover, it is apparent from the complaint that both of Boglin's verbal reports concerned the routine details of her job duties. Doc. 1 at 3–4. Indeed, processing various forms related to requisitions and travel requests was one of Boglin's basic professional responsibilities, *id.* at 3, and her internal reports directly relate to the content of those forms and the misconduct their processing purportedly revealed. *Id.* at 3–4. The complaint further suggests that Boglin's internal reports of misconduct were motivated directly by Boglin's supervisor's decision to ask Boglin to approve certain, purportedly fraudulent, documents, a responsibility beyond the scope of Boglin's ordinary duties, as pleaded. *Id.* at 4. In short, Boglin was concerned about the duties she was asked to perform and whether her duties were being properly carried out. The complaint is clear that these issues with the routine performance of Boglin's professional responsibilities were the only problems Boglin's internal reports plausibly raised either to her coworker or to A&M's Vice President of Student Affairs. *Id.* at 3–4.

Unfortunately for Boglin, these are precisely "the type of on-the-job, job-related exchanges that 'cannot reasonably be divorced from [job] responsibilities.'" *Keller v. City of Tallahassee*, 181 F. Supp. 3d 934, 954 (N.D. Fla. 2015) (quoting *Alves*, 804 F.3d at 1165). Finding, as Boglin wants, that uncovering fraud or making a report of malfeasance constitutes citizen speech because those activities are not, as a formal matter, within her job description "would disregard the actual activities [Boglin] engaged in . . . as well as the purpose served by [her complaints]." *Alves*, 804 F.3d at 1164. Instead, as pleaded, the subject matter of Boglin's verbal reports, the request that Boglin perform extra duties and improperly complete requisition and travel request forms, directly relate to Boglin's ability to perform her ordinary secretarial functions. Doc. 1 at 3–4. The court therefore concludes that because this speech "was an attempt to ensure proper implementation of [Boglin's duties] . . . [it] was therefore offered pursuant to [those] job duties," *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009), and notably Boglin has provided no other allegations enabling this court to disentangle her speech from its overwhelmingly professional context.

In any event, Boglin's contention that because her formal job description did not mandate verbal reporting for misconduct, she had no formal, affirmative obligation to report the alleged fraud or Clayton's misconduct is unavailing because the Supreme Court has said that "[f]ormal job descriptions often bear little

resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient" to indicate that the task is a part of an employee's professional duties. *Garcetti*, 547 U.S. at 424–25. Instead, the court undertakes "a functional review of an employee's speech" and asks "whether a public employee was speaking pursuant to an official duty, not whether that duty was part of the employee's everyday job functions." *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1285 (11th Cir. 2009) (quotation omitted). Moreover, the Eleventh Circuit has repeatedly emphasized that "[a]ctivities undertaken in the course of performing one's job are activities undertaken 'pursuant to employment responsibilities.'" *Alves*, 804 F.3d at 1164 (citation omitted).

As discussed previously, Boglin's performance of her regular job responsibilities, processing requisition and travel requests and following her supervisor's directives, involved her in the allegedly fraudulent and improper conduct engaged in by her co-workers. Doc. 1 at 3–4. While reporting mismanagement and malfeasance may not formally be part of Boglin's duties, implicit in her role as a Senior Secretary "is the duty to inform . . . those that would appear to have the most need to know and the best opportunity to investigate and correct the barriers to [Boglin's] performance." *Alves*, 804 F.3d at 1165. Therefore, as the Eleventh Circuit has repeatedly found, an employee who makes

internal reports regarding mismanagement and fraud generally speaks pursuant to her professional duties rather than as a citizen. *See, e.g.*, *id.* at 1164–65 (finding that a memorandum detailing repeated mismanagement of a student health center was not citizen speech because it represented an internal report of conduct interfering with the authors' job responsibilities); *Abdur-Rahman*, 567 F.3d at 1285 (explaining that "[s]peech that owes its existence to the official duties of public employees is not citizen speech even if those duties can be described so narrowly as not to mandate the act of speaking"); *Phillips v. City of Dawsonville*, 499 F.3d 1239, 1242–43 (11th Cir. 2007) (finding that even though reporting financial misconduct was not an enumerated duty it was still made "pursuant" to the reporting employee's official duties and thus unprotected by the First Amendment). The court therefore concludes Boglin was not speaking as a citizen when she made her internal complaints and, as such, her speech was not protected by the First Amendment.

### 2. *Whether Boglin's Speech Involved a Matter of Public Concern*

Alternatively, the Defendants' motion is due to be granted because Boglin has failed to adequately allege that her speech was on a matter of public concern. The complaint focuses primarily on two verbal reports of misconduct Boglin made to Dr. Bennie McMorris, the then Vice President of Student Affairs at Alabama A&M. Doc. 1 at 4. Although the complaint contains no specific allegations

regarding the details of those verbal reports, it generally alleges that Boglin approached Dr. McMorris due to her concerns about being asked to sign off on fraudulent reimbursement forms, a task outside the scope of her usual duties, and the improper completion of various forms which Boglin was required to process. *Id.* at 3–4. This type of complaint does not reflect any particular political or civic concerns Boglin may have had with respect to the behavior of her supervisor or coworkers. Nor is it the type of speech that generally qualifies for First Amendment protection as "directly affect[ing] the public's perception of the quality of education in a given academic system." *Maples*, 858 F.2d at 1553. Instead, the main thrust of the speech reflects only Boglin's concern with the internal operation and management of the department where she works, a topic of private rather than public concern. *See id.* at 1552–53 (collecting cases and explaining that "speech that concerns internal administration of the educational system . . . will not receive constitutional protection").

Simply because speech touches upon the general public interest in efficiently functioning public institutions does not "'transform a personal grievance into a matter of public concern.'" *Boyce v. Andrew*, 510 F.3d 1333, 1345 (11th Cir. 2007) (quoting *Ferrara*, 781 F.2d at 1516). Instead, the critical inquiry is whether "the purpose of [Boglin's] speech was to raise issues of public concern." *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000) (quotation omitted). Here, there is

no basis in the complaint before the court to support a plausible inference that Boglin's verbal reports to Dr. McMorris, although ostensibly intertwined with matters of public concern, were intended to raise the issue of Clayton's mismanagement for the public's benefit. *See, e.g.*, *Boyce*, 510 F.3d at 1344–45 (noting that even though public employees' speech was "intermingled" with the important public issue of child safety there was no showing that that the speech "intended to address matters of public concern from the perspective of a citizen"); *see also White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993) (explaining that "[e]ven as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, [her] First Amendment right to comment . . . is entitled to little weight").

This conclusion is buttressed by the fact that Boglin does not allege that she ever sought to publicize her concerns regarding Clayton's purported malfeasance. *See Morgan*, 6 F.3d at 754 (explaining that courts "may consider the employee's attempts to make the concerns public"). Indeed, the complaint reveals that the issues Boglin brought to the attention of Dr. McMorris were raised and discussed only within the confines of Alabama A&M, doc. 1. at 4. *See Alves*, 804 F.3d at 1168 (noting that the means by which the plaintiff "communicated [her] concerns further supports that this was a private employee grievance"). Moreover, there is

no indication from the complaint that Boglin was concerned about anything other than her ability to properly perform her duties, and she does not allege that she intended her internal complaints to alert the public to wrongdoing on the part of state officials.  As pleaded, the court lacks any basis to infer that Boglin's complaints were primarily motivated by a public purpose, i.e. a concern over the potential waste of taxpayer funds.  Instead, the plain inference from the complaint is that Boglin was concerned about acting outside of her usual job responsibilities and her inability to properly process various internal documents because of the allegedly fraudulent activities occurring in her department.  The First Amendment, simply does not empower public employees to "constitutionalize [their] employee grievance[s]" in this manner.  *Connick*, 461 U.S. at 154.

Boglin is certainly correct that "complaints about the misuse of public funds can be a matter of public concern."  *Boyett v. Troy State Univ. at Montgomery*, 971 F. Supp. 1403, 1416 (M.D. Ala. 1997).  However, her complaint, as pleaded, fails to provide any plausible basis to infer that the main thrust of her speech implicated a social, political, or other civic concern rather than an unprotected grievance with respect to interference with her professional responsibilities.  *See Connick*, 461 U.S. at 146.  Likewise, the complaint does not support Boglin's contention in her brief that her reports of misconduct "constituted speech protected by the First Amendment . . . [as] speech of a private citizen on a matter of public concern."

Doc. 27 at 13–14. While the court appreciates Boglin's attempts to characterize her speech, "it is the province of the court to determine whether [the speech constitutes] an employee grievance" or protected speech. *Alves*, 804 F.3d at 1166 n.6. Because the allegations in the complaint, evaluated as a whole, demonstrate that Boglin's workplace complaints were not intended to raise a matter of public concern, the court finds that her speech constituted a mere employee grievance unprotected by the First Amendment. *See Maggio*, 211 F.3d at 1353 (explaining that the "the relevant inquiry is not whether the public would be interested in the topic of the speech at issue . . . [instead it is] whether the purpose of [the employee's] speech was to raise issues of public concern") (quotation omitted).[5]

## V. CONCLUSION AND ORDER

To survive a motion to dismiss for failure to state a claim, Boglin must provide sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Boglin has failed to demonstrate that her speech is constitutionally protected under *Garcetti's* threshold inquiry and consequently her complaint does

_____

[5] It is true, as Boglin points out, that she alleges that her "complaints and disclosures . . . were speech of a private citizen on a matter of public concern." Doc. 1 at 5. However, this statement represents a mere legal conclusion and it is not entitled to a presumption of truth at the pleading stage. *See Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (explaining that these types of statements are "conclusory legal allegations" that "carry no weight"). Instead, to survive a motion to dismiss Boglin must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. She has failed to do so here.

not allege a plausible First Amendment violation.[6]  Therefore, the Defendants'
motion, doc. 19, is **GRANTED**.  Boglin's claims against Alabama A&M, the
board, and the individual members of the board in their official capacities, are
barred by the Eleventh Amendment and are accordingly **DISMISSED WITH
PREJUDICE**.  The official capacity claim against Clayton is **DISMISSED
WITHOUT PREJUDICE**.[7]  Finally, although Boglin's individual capacity claims
against Clayton and the members of the board, as currently pleaded, fail, Boglin
has requested an opportunity to amend before the court dismisses these claims,
doc. 27 at 12 n.5, and the court will allow Boglin this opportunity.  Any such
amendment must be filed within fourteen (14) days of the entry of this order.

     **DONE** the 6th day of February, 2018.

                                    **ABDUL K. KALLON**
                              UNITED STATES DISTRICT JUDGE

---

[6] Boglin also briefly argues that a ruling on whether her speech was entitled to First Amendment protection is premature at this juncture because to make such a determination the court must examine "the content, form, and context of a given statement as revealed by the whole record." *Connick*, 461 U.S. at 147–48.  However, when ruling on a motion to dismiss, the court simply asks whether, taking all of the factual allegations contained in the complaint as true and viewing them in the light most favorable to the plaintiff, the complaint has alleged a plausible claim.  As explained above, Boglin has failed to do so here and, accordingly, her complaint cannot survive a motion to dismiss.

[7] Although Boglin never argues or pleads that Clayton possesses the delegated authority from the president to reinstate Boglin to her former position, perhaps this failing was an oversight given that she pleaded that Clayton had the authority to discharge her.  To the extent that Clayton had hiring and firing authority, then the official capacity claims against her are not barred by the Eleventh Amendment as she would have the authority "to enforce an unconstitutional act in the name of the state."  *Summit Med.*, 180 F.3d at 1341.